1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    Thomas and Jennifer Griggs,              No. CV-12-02257-PHX-JAT
     husband and wife,
10                                            **ORDER**
                          Plaintiffs,
11
12   v.

13   State of Arizona; Oasis Adoption Services,
14   Inc.; Catherine Braman; Sarah L. Pedrazza;
     Denise Chen; Victoria Palko and David
15   Palko; Patricia Allen,

16                          Defendants.

17

18          Pending before the Court is a Motion to Dismiss State Defendants (Doc. 18) filed

19   by Defendants State of Arizona, Denise Chen, Victoria and David Palko (named in the

20   complaint as John Doe Palko), and Patricia Allen (collectively, the "State Defendants").

21   **I.    Factual Background[1]**

22          Dina Reed became pregnant.  In January of 2011, Ms. Reed got in touch with

23   Plaintiffs Thomas and Jennifer Griggs via Plaintiffs' pastor about adopting the unborn

24   child.  Plaintiffs agreed to adopt the child and Ms. Reed agreed to permit her child to be

25   adopted.   Plaintiffs contacted an attorney on June 23, 2011.   The attorney advised

26   _____

27          [1] The facts in the Background section of this Order are as alleged in the First
     Amended Complaint ("FAC"). (Doc. 14).  The Court has accepted the allegations as true
28   for the purpose of deciding the Motion to Dismiss.

1  Plaintiffs to complete a home study right away in order to become certified adoptive
2  parents.

3      Plaintiffs employed Oasis Adoption Services, Inc. ("Oasis") to conduct the home
4  study. Oasis began the home study on July 5, 2011. During the home study, Oasis
5  learned that Mr. Griggs had been molested as a child. Oasis therefore asked Mr. Griggs
6  to undergo a sexual deviancy assessment that included a plethysmograph. Mr. Griggs
7  objected to the sexual deviancy assessment process, finding it repulsive and contrary to
8  his religious beliefs. Although Mr. Griggs offered alternative proofs that he was not a
9  sexual deviant, Oasis insisted he undergo the plethysmograph. Unable to reach an
10 agreement on how to proceed, Plaintiffs terminated their relationship with Oasis on July
11 28, 2011. That same date, Oasis sent a letter to the state court[2] containing false and
12 misleading statements relating to Mr. Griggs's psychological health. At some point,
13 Plaintiffs found a new agency to conduct the home study: OLOS Adoption and Child
14 Welfare Agency ("OLOS").[3]

15     Ms. Reed gave birth to the child on August 16, 2011.

16     The state court awarded Plaintiffs temporary custody of the child on September 7,
17 2011. On September 26, the court denied Plaintiffs' petition to be certified as acceptable
18 to adopt children. Plaintiffs filed a motion to reconsider. On October 14, the state court
19 awarded temporary custody to Child Protective Services ("CPS") and ordered CPS to
20 conduct an investigation.[4] That same date, the state court set an evidentiary hearing on
21 Plaintiffs' motion to reconsider their certification. The court ordered representatives

23    [2] It is not clear from the FAC when the state court proceedings began, but
24 proceedings were apparently already underway to determine whether Plaintiffs were fit
25 and proper persons to adopt children.

26    [3] It is not clear from the FAC what date Plaintiffs hired OLOS. Presumably,
27 Plaintiffs hired OLOS sometime after July 5 and before October 14, 2011, when OLOS
was involved in one of Plaintiffs' state court proceedings. (Doc. 14 at 5).

28    [4] The nature of the investigation ordered is not clear from the FAC.

from both OLOS and Oasis to attend that hearing.  Plaintiffs surrendered custody of the child to CPS on October 17.

On December 5, 2011, three days before the evidentiary hearing, Plaintiffs learned that the child had been placed with an out-of-state adoptive family.  Prior to that date, no one had notified Plaintiffs of the out-of-state adoption.  At the evidentiary hearing on December 8, Oasis admitted that its letter contained false and misleading statements about Mr. Griggs.  On January 31, 2012, the state court certified Plaintiffs as acceptable to adopt children.  By that date, however, the child Plaintiffs wanted to adopt had already been placed with another family.  The State Defendants now move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because the FAC fails to state a claim against them upon which relief can be granted.

**II.    Legal Standard**

The Court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id.*  Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see

how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94, 95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, a complaint must contain sufficient factual matter which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III.   Discussion

The FAC alleges five counts against all Defendants. The State Defendants move for dismissal of all counts against them. Each count's application to the State Defendants is addressed below.

### A.   Count One: Federal Civil Rights Violations

Pursuant to 42 U.S.C. § 1983, Plaintiffs allege the State Defendants violated rights, privileges, and immunities secured by the Fifth and Fourteenth Amendments of the United States Constitution. (Doc. 14 at 8). The State Defendants argue Count One

should be dismissed against them because it fails to specify any rights Plaintiffs had that the State Defendants could have violated. (Doc. 18 at 11). Neither the Fifth nor the Fourteenth Amendment guarantees any right to adopt a child. *See Mullins v. State of Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) ("[W]hatever claim a prospective adoptive parent may have to a child, we are certain that it does not rise to the level of a fundamental liberty interest [protected by substantive due process]."). Plaintiffs concede this point. (Doc. 21 at 2). Instead, Plaintiffs characterize Count One as a procedural due process claim, (*id.* at 6), or in the alternative, as a "privilege to adopt whose suspension, much like a driver's license, was subject to constitutional restraint." (*Id.* at 5).

Although a "privilege to adopt" may be, in a sense, analogous to a driver's license, no such privilege was suspended here. Plaintiffs cite *Bell v. Burson* for the proposition that "important interests" cannot be suspended without due process. 402 U.S. 535, 539 (1971). In *Bell*, the United States Supreme Court held it was a violation of due process for a State to suspend a person's driver's license after a car accident without holding any hearing to determine who was at fault. *Id.* at 542. The Court reasoned:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Id.* at 539. On the other hand, "[i]f the statute barred the issuance of licenses to all motorists who did not carry liability insurance or who did not post security, the statute would not, under our cases, violate the Fourteenth Amendment." *Id.*

People are not born with driver's licenses. A person who wishes to drive must apply to the State for a license. The State will require the person to undergo certain tests to certify that the person is fit to drive. Upon passing those tests, a driver's license is "issued." *Id.* Similarly, people are not born with a "privilege to adopt" a child. *See*

*Adams v. State*, 916 P.2d 1156, 1163 (Ariz. Ct. App. 1995) ("Prospective adoptive parents have no absolute right to adopt a child nor any right to be free from a thorough investigation and screening before their adoption certification and petition are approved and the adoption is finalized."). In Arizona, people who wish to adopt a child must apply for a certification and must submit to an investigation "to determine if they are fit and proper persons to adopt children." Ariz. Rev. Stat. § 8-105(C). "A certificate shall be issued only after an investigation conducted by" State authorities. Ariz. Rev. Stat. § 8-105(A). Plaintiffs were issued a certificate on January 31, 2012. After that date, "their continued possession may [have] become essential" to "important interests." *Bell*, 402 U.S. at 539. But prior to that date, when the alleged due process violation occurred, Plaintiffs had no "privilege to adopt." A constitutional restraint cannot apply to a privilege that does not exist.

Plaintiffs allege no facts supporting their alternative characterization of Count One as a procedural due process claim. Procedural due process claims are analyzed in two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Am. Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1058 (9th Cir. 2012) (quoting *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Procedural due process protects more than just fundamental rights—it protects "all liberty interests that are derived from state law or from the Due Process Clause itself." *Mullins*, 57 F.3d at 795.

Here, Plaintiffs cannot make it beyond the first step. As discussed above, Plaintiffs had no interest in the child derived from the Due Process Clause. Further, Plaintiffs fail to cite any state law upon which such an interest could be derived. *See id.* ("The Mullinses have not pointed to a single Oregon statute that confers upon [a] grandparent a right of adoption on the basis of mere lineage."). Indeed, Arizona law appears to state clearly that Plaintiffs had no such interest. *See* Ariz. Rev. Stat. § 8-105(A) ("Before any prospective adoptive parent may petition to adopt a child the person

shall be certified by the court as acceptable to adopt children."); *Adams*, 916 P.2d at 1163 ("Prospective adoptive parents have no . . . right to be free from a thorough investigation and screening before their adoption certification and petition are approved and the adoption is finalized."). Thus, if Plaintiffs had no liberty interest protected by state or federal law, they cannot allege a violation of procedural due process. *Masto*, 670 F.3d at 1058.

Plaintiffs argue that, because they "were a party to the adoption proceeding," (doc. 21 at 4), they had a due process guarantee of fair procedure, including the "right to be heard." (*Id.* at 6). But there is no allegation that Plaintiffs were denied the right to be heard. To the contrary, more than half of the FAC's factual background describes events that took place in state court proceedings to which Plaintiffs were a party. (Doc. 14 at 5–7). Plaintiffs cite Ariz. Rev. Stat. § 8-108(A) to describe the nature of these state proceedings. (Doc. 21 at 2 n.7). That statute says "the burden of proof is on [Plaintiffs] to show that permitting custody is in the child's best interests. The court may permit [Plaintiffs] to have custody or it may order that custody be given to some other person or agency as it deems to be in the child's best interests." Ariz. Rev. Stat. § 8-108(A). Nowhere do Plaintiffs allege they were denied the opportunity to present their case to the state court. Instead, Plaintiffs allege the state court "held a hearing on October 14, 2011. . . . The commissioner placed temporary custody of [the child] with CPS." (Doc. 14 at 5). Plaintiffs' failure to meet their burden of proof in state court does not translate into a violation of their due process rights.

Finally, Plaintiffs argue "[i]t is a reasonable inference that but for CPS disobeying the court's order [to conduct an investigation], [Plaintiffs and the child] would still be together." (Doc. 21 at 6). Based on the facts alleged, the Court disagrees. The FAC alleges the state court placed the child in CPS custody on October 14, 2011—the same date it ordered CPS to conduct an investigation. (Doc. 14 at 5). Thus, CPS could not have disobeyed the order until after Plaintiffs' temporary custody was terminated. In addition, the state court gave CPS 45 days (until December 1, 2011) to report the findings

from its investigation.  (*Id.*)  The next hearing was not scheduled until December 8—three days after Plaintiffs learned the child had been adopted by another family. (*Id.* at 5, 6).  Even had CPS reported its findings on time, there is no allegation that the state court would have held an earlier hearing or would have intervened in some other way.  It is thus not reasonable to infer that the state court would have awarded Plaintiffs custody prior to the other family's adoption of the child if CPS had filed its investigation report within 45 days.

Plaintiffs have failed to identify "any rights, privileges, or immunities secured by the Constitution and laws" that the State Defendants could have caused a "deprivation of."  42 U.S.C. § 1983.  Accordingly, Count One alleges insufficient facts to support a cognizable legal theory, and will be dismissed against the State Defendants.

### B.    Count Two: State Due Process Violations

Plaintiffs allege the State Defendants violated their due process rights under the Arizona Constitution. (Doc. 14 at 9).  As in Count One, the State Defendants argue Count Two should be dismissed because it fails to identify any rights protected by the Arizona Constitution the State Defendants could have violated.  (Doc. 18 at 12).  "The Due Process Clause of the Arizona Constitution is construed similarly to the same clause in the United States Constitution."  *Villalpando v. Reagan*, 121 P.3d 172, 174 n.1 (Ariz. Ct. App. 2005).  As discussed above, Plaintiffs have not alleged a violation of any interests protected by the United States Constitution.  Plaintiffs do not argue the Arizona Constitution protects more interests than the United States Constitution.  Instead, Plaintiffs "rely on their federal civil right [sic] claim argument" to support their state due process claim.  (Doc. 21 at 6).  Accordingly, because Count Two is premised entirely on Count One, Count Two will be dismissed against the State Defendants.

### C.    Count Three: Abuse of Legal Process

Plaintiffs allege the State Defendants abused legal processes.  (Doc. 14 at 9).  The State Defendants move to dismiss Count Three because it does not allege the State Defendants took any "judicial action" with an improper motive.  (Doc. 18 at 12).  In

Arizona, the elements of an abuse-of-process claim are: "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 887 (Ariz. Ct. App. 2004). To establish the first element, "a plaintiff must prove that one or more specific judicially sanctioned processes have been abused." *Id.* To meet the second element, Plaintiffs must show the State Defendants "took an action that could not logically be explained without reference to the defendant's improper motives." *Id.* at 889.

The only "act" Plaintiffs allege the State Defendants performed that could potentially be "in the use of judicial process" is failing to conduct a court-ordered investigation. (Doc. 14 at 6); (Doc. 21 at 7). Even assuming this failure could be considered a "willful" abuse of a "specific judicially sanctioned process," Plaintiffs have not suggested the State Defendants had any improper motives. The closest Plaintiffs come is suggesting the State Defendants "sided with Oasis." (Doc. 21 at 7). Although Plaintiffs allege Oasis committed certain actions not at issue in this motion, Plaintiffs do not allege Oasis had improper motives. Plaintiffs argue only that it was "financially beneficial" for Oasis to have the child placed through their agency. (Doc. 14 at 5). Plaintiffs do not explain how this financial motivation was improper. Presumably, Oasis would have had the same financial motivation to place the child with Plaintiffs if Plaintiffs had been "certified by the court as acceptable to adopt children." Ariz. Rev. Stat. § 8-105(A). Furthermore, OLOS—and every other adoption agency in Arizona— presumably had the same financial motivation as Oasis. Moreover, even if Oasis's financial motivation was uniquely improper, Plaintiffs fail to allege or explain why that motivation should be imputed to the State Defendants.

Finally, Plaintiffs assert that the way the State Defendants' placed the child through Oasis "was not the purpose for which the adoption process was designed." (Doc. 21 at 7). The purpose of the adoption process is to do what is in "the best interests of the child." *See* Ariz. Rev. Stat. §§ 8-103(D), 8-108, 8-110, 8-112, 8-113(H), 8-116(A), 8-116.01, 8-118; § 8-133(B), 8-163(B)(3); *Matter of Appeal in Pima County Juvenile*

1    *Action B-10489*, 727 P.2d 830, 833 (Ariz. Ct. App. 1986) ("The primary issue the court

2    should consider when deciding whether to certify an applicant as suitable to adopt

3    children is the best interest and welfare of any child who might be adopted by that

4    person."). CPS was awarded custody of the child on October 17, 2011. (Doc. 14 at 6).

5    Plaintiffs were not certified as acceptable to adopt children until January 31, 2012. (*Id.* at

6    7). Plaintiffs fail to explain how it was in the best interests of the child to remain in state

7    custody during this time, or how the State Defendants acted contrary to the child's best

8    interests by permitting the child to be placed with a certified adoptive family sometime

9    prior to December 5, 2011. (*Id.* at 6). Thus, Count Three alleges insufficient facts to

10   support a cognizable legal theory. Accordingly, Count Three will be dismissed against

11   the State Defendants.

12                  **D.    Count Four: Negligence**

13          The State Defendants argue Count Four should be dismissed because Plaintiffs

14   have not alleged facts sufficient to meet the elements of a negligence claim. (Doc. 18 at

15   13). "To establish a claim for negligence, a plaintiff must prove four elements: (1) a duty

16   requiring the defendant to conform to a certain standard of care; (2) a breach by the

17   defendant of that standard; (3) a causal connection between the defendant's conduct and

18   the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz.

19   2007). The FAC alleges the State Defendants owed Plaintiffs "a duty to properly train

20   and supervise [the State Defendants'] employees and agents." (Doc. 14 at 9). The State

21   Defendants allegedly breached this duty "by failing to conduct reasonable

22   investigations." (*Id.*) The FAC alleges this breach "caus[ed] CPS to take [the] child."

23   (*Id.*)

24          Even assuming the State Defendants owed Plaintiffs the alleged duty and breached

25   that duty by failing to conduct a reasonable investigation, it is implausible based on the

26   allegations that the State Defendants' failure to timely investigate caused CPS to take the

27   child. The FAC alleges the state court ordered Plaintiffs to surrender the child to CPS the

28   same day it ordered the State Defendants to conduct an investigation. (*Id.* at 5). The

results of the court-ordered investigation were not due until 45 days after CPS took custody of the child. (*Id.*)  Because CPS was ordered to "take [the] child" before the investigation was due, the incomplete investigation could not have been what caused CPS to "take [the] child."  Thus, the FAC fails to establish causation on its own terms.

It is implausible that CPS's failure to investigate caused the child to be placed with another family even if the investigation had some bearing on the child's placement.  The State Defendants were given 45 days from October 14, 2011, to conduct the investigation.  Thus, the report was due December 1.  Four days after the report was due, on December 5, Plaintiffs learned that another family had already adopted the child.  If the child was adopted on or prior to December 1, the cause could not have been the incomplete investigation because the report was not yet due.  Thus, the incomplete investigation could only have been the "cause" of the other family's adoption if the adoption took place on December 2, 3, 4, or 5.  But, even if the child was adopted on one of those days, Plaintiffs do not explain, and it is not apparent, how the adoption would have been prevented if CPS had turned in its report on December 1.

Plaintiffs have not otherwise shown the State Defendants owed them any particular duty of care.  In their Response to the Motion to Dismiss, Plaintiffs suggest CPS owed Plaintiffs a "relationship duty" because CPS was "entrusted with duties in the adoption process and by court order."  (Doc. 21 at 8).  However, Plaintiffs fail to explain how the duties created by the adoption process and the state court order were duties owed to Plaintiffs rather than duties owed to the child.  *See* Ariz. Rev. Stat. § 8-108(A) ("The court may permit the petitioner to have custody or it may order that custody be given to some other person or agency as it deems to be in the child's best interests.").  Plaintiffs also ask this Court for "a judicial finding of duty" owed by CPS to Plaintiffs "as a matter of public policy."  (Doc. 21 at 8).  Absent any argument that public policy is anything other than the state court's determination of the child's best interests, this Court declines to make such a finding.  Accordingly, Count Four will be dismissed against the State Defendants because it alleges insufficient facts to support a cognizable legal theory.

1    **E.      Count Five: Inflection of Emotional Distress**

2          The State Defendants argue Count Five should be dismissed because Plaintiffs fail

3    to allege the State Defendants engaged in any extreme or outrageous conduct.  To prevail

4    on a claim for intentional infliction of emotional distress, Plaintiffs must prove three

5    elements: "*first*, the conduct by the defendant must be 'extreme' and 'outrageous';

6    *second*, the defendant must either intend to cause emotional distress or recklessly

7    disregard the near certainty that such distress will result from his conduct; and *third*,

8    severe emotional distress must indeed occur as a result of defendant's conduct."  *Ford v.*

9    *Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987) (emphasis in original).  To meet the first

10   element, the alleged conduct must be "so outrageous in character, and so extreme in

11   degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

12   and utterly intolerable in a civilized community."  *Id.*

13         The FAC does not specify what conduct on the State Defendants' part was so

14   outrageous and so extreme as to go beyond all possible bounds of decency.  (Doc. 14 at

15   10).  In their Response, however, Plaintiffs specify that it was "outrageous" for the State

16   Defendants to have "ignored" the state court's order and to have placed the child with

17   another adoptive family "secretly."  (Doc. 21 at 9).

18         Although the FAC alleges the State Defendants "never filed the court ordered

19   [investigation] report," (doc. 14 at 6), the nature of the ordered investigation is not

20   alleged.  The state court ordered the investigation after learning that Mr. Griggs had been

21   molested as a child and that he had refused to take Oasis's sexual deviancy assessment.

22   (*Id.* at 5).  On the one hand, the state court might have ordered the investigation for

23   reasons related to the best interests of the child.  If that is the case, the State Defendants'

24   failure to investigate could not have harmed Plaintiffs.  On the other hand, the purpose of

25   the investigation might have been to determine whether Plaintiffs were "fit and proper

26   persons to adopt children."   Ariz. Rev. Stat. § 8-105(C).   In that case, the State

27   Defendants' efforts would have been duplicative of OLOS's.  OLOS found Plaintiffs to

28   be fit and proper, but the FAC does not say when OLOS completed its investigation.

As discussed earlier, the investigation report was due on December 1, 2011.  Four days after the report was due, on December 5, Plaintiffs learned that another family had already adopted the child.  Three days after that, on December 8, the state court held an evidentiary hearing regarding Plaintiffs' fitness to adopt.  Notably, this hearing resulted in an order certifying Plaintiffs as fit to adopt even though the State Defendants "never filed the court ordered report."  Thus, at worst, the report could not have been more than seven days late.  Accepting this allegation as true, such action is not extreme or outrageous conduct sufficient to state a claim for intentional infliction of emotional distress.  Further, based on Plaintiffs' allegations, even if the State Defendants filed the report on time, Plaintiffs' situation would not be changed: another family adopted the child prior to the evidentiary hearing.

Likewise, it cannot plausibly be considered "outrageous" that the State Defendants "secretly" permitted a certified family to adopt the child at a time when Plaintiffs were not certified.  It would have been unlawful for the State Defendants to "disclose . . . any information involved in" the other family's adoption proceeding.  Ariz. Rev. Stat. § 8-121(A).  When a state agency is confronted with a choice between obeying and disobeying state law, it is highly improbable that the choice to obey would be considered "outrageous" and "utterly intolerable in a civilized community."  Again, the action alleged, even if true, is not extreme or outrageous conduct sufficient to state a claim for intentional infliction of emotional distress.  Accordingly, Count Five will be dismissed against the State Defendants.

///

//

/

1

**IV.    Conclusion**

2
Based on the foregoing,

3
**IT IS ORDERED** granting the Motion to Dismiss State Defendants. (Doc. 18).

4
Defendants State of Arizona, Denise Chen, Victoria and David Palko (named in the

5
complaint as John Doe Palko), and Patricia Allen are dismissed without prejudice.

6
Dated this 10th day of April, 2013.

7

8

9

10

11
James A. Teilborg
Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28